## BETHLEHEM SHIPBUILDING CORPORATION, Limited, v. WEST & DODGE CO.

(Circuit Court of Appeals, First Circuit. December 18, 1922.)

### No. 1548.

United States ⊕—74½, New, vol. 12A Key-No. Series—Inference held warranted that letter to government contractor, misrepresenting cost of oil burners, was submitted to government board.

Where plaintiff, which had contracted to furnish certain oil burners to a government contractor for torpedo boat destroyers at a price specified, subject to approval of the Compensation Board, after repeated requests for a statement concerning the cost, wrote the contractor that the cost was about 85 per cent. of the price quoted, in connection with other circumstances, inference *held* warranted, in suit in which the contractor pleaded fraud in misrepresenting the cost and securing the approval of the board, that the contractor, in fulfillment of its duty, communicated this statement to the board.

Johnson, Circuit Judge, dissenting.

In Error from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action by the West & Dodge Company against the Bethlehem Shipbuilding Corporation, Limited. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

See, also, 266 Fed. 557; 269 Fed. 100.

Essex S. Abbott, Sp. Asst. U. S. Atty., of Boston, Mass., and Pickens Neagle, of Washington, D. C., Atty. for Navy Department (Rob-

ert O. Harris, U. S. Atty., of Boston, Mass., on the brief), for plaintiff in error.

Michael J. Mulkern, of Boston, Mass. (Ralph H. Willard and Ham, Willard & Taylor, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action of contract brought by the West & Dodge Company against the Bethlehem Shipbuilding Corporation and is defended by the United States as the sole party in interest. There was a trial by jury in the Massachusetts District Court and a verdict directed for the plaintiff upon which judgment was entered for $19,133.57, with costs of suit, and this writ of error was brought by the defendant.

In its declaration the plaintiff alleges that it made a contract with the defendant by which it agreed to furnish certain oil burners, oil burner air cones, and oil burner holders for the equipment of 40 boats and the defendant was to pay therefor the sum of $3,223 per boat; that the plaintiff made and delivered the parts in accordance with the terms of the contract, but the defendant, though it paid for the parts for 35 boats, neglected and refused to pay for the parts for the remaining 5 boats, and owed the plaintiff therefor the sum of $16,115, plus interest from January 22, 1919, when said sum became due and payable.

In its amended answer the defendant admitted the making of the contract for the burners, etc., at the rate of $3,223 per boat, the manufacture and delivery of the burners, the payment of a sum equivalent to full payment under the contract for burners for 35 boats and its refusal to pay the balance of the claim. And for further answer it alleged that it made a contract with the United States whereby it was to construct for the United States 40 torpedo boat destroyers on the cost plus basis; that the oil burners, etc., were ordered and used by the defendant in the construction of said 40 torpedo boat destroyers; that the plaintiff at all times knew that the oil burners called for by the contract were to be used in the 40 torpedo boat destroyers; and that by the express terms of each of said contracts the price payable to the plaintiff for the oil burners, etc., was subject to the determination of the Compensation Board, an agency of the United States constituted as provided in the contract between the United States and the defendant.

And further answering the defendant alleged that previous to the contract in question it had made three contracts with the United States for the construction of torpedo boat destroyers and received from the plaintiff proposals for oil burners, etc., similar in all respects to the oil burners sued for, at the price of $3,300 per boat for two of said contracts, and $3,350 per boat for the third contract and the contract mentioned in the plaintiff's declaration; that all of said contracts were as to price subject to the approval of the Compensation Board, the plaintiff well knowing that said oil burners were to be used in said torpedo boat destroyers; that the contracts or orders having been approved, ex-

cept as to price, the defendant, at the instigation of the Compensation Board, repeatedly called on the plaintiff to furnish for the Compensation Board information as to the cost of the manufacture of the oil burners; that, the information not being forthcoming, the plaintiff, on being further pressed for the cost data, stated that the cost of the manufacture of the oil burners, as far as the plaintiff was able to judge, was about 85 per cent. of the price quoted in the plaintiff's proposal to the defendant; that later the defendant, in response to the plaintiff's request for remittances on account of the work delivered, procured the approval of a tentative price of $3,223 per boat in connection with the material already shipped; that thereafter the plaintiff requested the defendant to submit to the Compensation Board a proposal that it would accept $3,223 per boat for the burners under all four contracts; that the defendant, as requested, submitted the proposal, and that the board, under date of April 13, 1918, approved the same; that the plaintiff, in submitting said proposal, intended to represent to the Compensation Board that the price of $3,223 for the oil burners was a fair and reasonable price, based upon the cost of manufacture, and did not include any unreasonable or exorbitant profit; that the Compensation Board relied on said representation, and in consequence of said reliance approved the price; that the representation was false, and that the price included a grossly unfair, unreasonable, and exorbitant profit to the plaintiff over and above the cost of manufacture; and the defendant further alleged that in consequence of said false representation the action of the Compensation Board in approving the price was void and of no effect, and was not binding on the defendant.

At the close of all the evidence the court instructed the jury to return a verdict for the plaintiff for the amount claimed, on the ground that the defense of fraud had not been made out, as there was no evidence on which a finding could be made that the letter of March 4, hereafter discussed, ever came to the attention of the Compensation Board and influenced its action in approving the price of $3,223; and the question raised by the defendant's assignment of error is whether there was any evidence submitted at the trial from which the jury would have been warranted in finding that the plaintiff, in seeking the approval of a price of $3,223 per boat for the oil burners, represented that the cost of production was such that the price proposed would give only a fair profit, and influenced the board in approving the same.

The evidence showed that the defendant, on December 6, 1917, entered into a contract with the United States for the construction of 40 torpedo boat destroyers to be built at the defendant's Union plant at San Francisco, Cal.; that in said contract it was provided that the government should pay the cost of the work, and in addition thereto a lump sum as compensation to the contractor; that provision therein was made for a Compensation Board, whose duty it was to ascertain, estimate, and determine the actual cost of the work stipulated in that contract; that it also contained the following:

"The contractor shall use every endeavor to obtain the material, machinery, equipment, appurtenances, supplies, etc., under this contract at the lowest possible prices, and shall in no case knowingly pay higher prices than are required by the existing market conditions nor higher prices than are or

would be paid for similar materials, etc., purchased at the same time and under like circumstances and conditions for other work in progress in the yard. Specifications and guaranties of all materials, machinery, and equipment, and the agreements under which such are purchased shall be subject to the approval of the department, and orders, prices and awards shall be subject to the approval of the Compensation Board."

This contract with the government was authorized under the Acts of Congress approved March 4, 1917 (39 Stat. 1168), and October 6, 1917 (40 Stat. 371, 383), in the former of which it was provided that—

"No purchase of structural steel, ship plates or machinery shall be made at a price in excess of a reasonable profit above the actual cost of manufacture." 39 Stat. 1195.

It also appeared that on December 11, 1917, the defendant, through its Union Iron Works Company, placed an order with the plaintiff for oil burners, oil burner air cones, and oil burner holders for 40 boats in accordance with specifications forwarded with a previous order No. F–1211–14 at the price of $3,350 per boat, subject to the approval of the Compensation Board; that in said contract it was stated that the equipment ordered was for use in government vessels, and it was there stipulated that not later than March, 1918, burners sufficient for 5 boats should be delivered, and thereafter enough burners for 5 boats each month should be delivered until the order was completed; that January 7, 1918, the order was approved by the Compensation Board as to the award, but not as to price; that as early as January 8, 1918, the defendant, at the request of a representative of the Compensation Board, wrote the plaintiff, stating that a detailed statement of costs was required by the government cost inspector at defendant's plant before approval of the price with reference to purchase orders F–926–7 and F–927–8, orders previously placed by the defendant with the plaintiff for oil burners, etc.; that January 10, 1918, the plaintiff replied to the defendant that the material of those orders was about 60 per cent. completed; that they expected to make shipments of some of these completed burners within the next 2 or 3 weeks; that orders F–926–7 and F–926–8 were their first orders on this line of work, and at that time it was not possible for them to give a statement of the costs; that January 17, 1918, the defendant acknowledged receipt of the letter of January 10, and called the plaintiff's attention to the fact that it did not state when the statement as to costs would be forwarded, and requested further information upon that question; that January 17, 1918, the defendant wrote the plaintiff in regard to purchase order F–1211–14, the third order for oil burners placed by the defendant with the plaintiff, and requested that a statement of the cost be furnished in connection, therewith, stating that they did so at the request of the naval cost inspector at the plant, representing the Compensation Board, and suggesting that a statement be prepared at the earliest date possible; that on March 1, 1918, the defendant wrote the plaintiff, calling its attention to its letter of January 10 as to purchase orders F–926–7 and F–926–8 (the first two orders), and stated in substance that they assumed that since January 10 they had made material progress in their work and hoped they were in a position to give the desired cost data, but, wheth-

er they were or not, requested prompt advice, "stating just when the statement of costs is to be expected"; that on March 4, 1918, the plaintiff wrote the defendant acknowledging the receipt of its letter of March 1, and calling the defendant's attention to the plaintiff's letter of September 24, 1917, wherein it quoted the price on oil burners of $3,300 per boat (the first contract) and stated: "The cost of these oil burners, so far as we have been able to judge, is about 85 per cent. of the price quoted you. Trusting that this is the desired information, we are, yours very truly;" that on March 6, 1918, the defendant wrote the plaintiff referring to its letter of March 4 with regard to purchase orders F–926–7 and F–926–8 and F–1211–14, and calling on them again to furnish a cost statement; that on March 9, 1918, the defendant wrote the plaintiff as to the cost data required by the cost inspector in connection with all four orders, suggesting an immediate making out of the cost statement, and stating that the defendant had "taken up tentatively with the cost inspector the matter of advance payments for material already shipped by you to the Union Iron Works; that we trust to be in position at an early date to advise you that such approval has been authorized"; that on March 13, 1918, the defendant wrote the plaintiff, calling its attention to the defendant's letter of March 9 in regard to the tentative approval of the price on all the orders, and said, "We have secured approval of a tentative price of $3,223 per boat in connection with material already shipped by you to the Union Plant and invoiced;" that on April 2, 1918, the plaintiff wrote the defendant referring to the defendant's letter of March 13, and confirming a conversation of Mr. Dodge with Mr. Readmon on March 28, with regard to all the purchase orders, and stated that, "although you have notified us that authority had been wired at San Francisco for the approval of a tentative price of $3,223 per boat, still we have not yet received any remittances on these orders. * * * We trust you will use every effort to get these bills approved and remittances made to us immediately;" also stating that they were still unable to get the cost statement in shape, owing to a change in their bookkeeping department and pressure of business, "but we would be willing, as we have already explained to Mr. Readmon, taking into consideration the number of boats we are now working on, to suggest that we make a flat rate of $3,223 per boat on all of the orders above mentioned, provided the necessary approval could be obtained at once," and requesting the defendant to "submit this proposition to the necessary authorities"; that on April 13, 1918, the Compensation Board notified the defendant of formal approval of purchase order F–1211–17, it being the order here in question, at a price of $3,223 per boat; and that, on April 16, 1918, the defendant notified the plaintiff of that approval.

It further appeared in evidence that the letters of March 4, 1918, and of April 2, 1918, bore a rubber stamp in red ink, "F. P. Comp. Board Copy," meaning, Purchasing Agent, Compensation Board Copy, and that it was kept in the price file rather than the commodity file at the defendant's plant, and was open to the inspection of the cost inspectors representing the Compensation Board, who were stationed there; but there was no direct evidence that either letter was presented

to the Compensation Board, and it is because of the absence of this direct proof that the District Court ruled as it did.

We think, however, that the jury would have been warranted in finding from this evidence that the plaintiff knew that, before it could get an approval of the price by the Compensation Board, it must furnish some statement as to cost of production; that, although it was repeatedly called on to furnish a detailed statement of cost, it avoided doing so through one pretext or another down to March 4, 1918, when it wrote that the cost was about 85 per cent. of the quoted price of $3,300; that between January 10 and March 4, 1918, it had completed the manufacture and delivery of the whole or a greater part of the oil burners called for under the first contract, and to which the letter of March 4 referred, and could reasonably be found to have then known what the cost of manufacture was, but that, not desiring to make a detailed statement, it made the statement it did in the letter of March 4, intending that it should be communicated to the Compensation Board and relied upon in the approval of the price. In that letter it said, "We trust that this is the desired information," meaning, undoubtedly, the information desired by the Compensation Board for action in the approval of the price. And, although there is no direct evidence that the letter was presented to the board, we nevertheless think that the circumstances surrounding the situation were such that a jury would be warranted in finding that the defendant communicated the statement as to cost in the letter of March 4 to the board for action. There was every reason for its doing so. The defendant, at the instance of the Compensation Board and in furtherance of its obligation under its contract with the government, had taken upon itself the duty of obtaining such information for the board. The plaintiff, after repeated requests from the defendant, sent the letter of March 4 intending the statement as to cost should be given to the Compensation Board, and, the defendant having received it under such circumstances and in behalf of the Compensation Board, it is not unreasonable to infer that, in fulfillment of its duty, it communicated the statement to the board.

It also appears that there was no direct evidence that the letter of April 2 was ever presented to the Compensation Board, but it is evident that the proposal which it contained was brought to the attention of the board. In that letter the plaintiff asked the defendant to submit the proposition of $3,223 per boat to the necessary authorities for approval, and, the proposition having been approved, it necessarily follows it was submitted and relied upon, though the letter itself may never have been brought to the board's attention; and we do not think it unreasonable to infer that, as an inducement to the acceptance of that proposition by the board, the statement of the plaintiff that the cost of the oil burners was 85 per cent. of the price quoted was likewise submitted, that being the only statement coming from the plaintiff giving any information as to cost.

The defendant also made an offer of proof which tended to show that the actual cost of the burners per boat was $1,380, and that the price of $3,223 gave the plaintiff a profit of $1,843, or about 126 per cent.; that such a profit was unreasonable and exorbitant; and that plaintiff's representation that the cost was about $2,805 (85 per cent. of

$3,300), and was such as to yield only a reasonable profit, was false.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the plaintiff in error.

JOHNSON, Circuit Judge, dissents.